IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUNTER KITCHEN & BATH, LLC : | |
| AND CHADWICK HUNTER : | CIVIL ACTION |
| : | |
| v. : | NO. 19-5979 |
| : | |
| R.D. HENRY & COMPANY, LLC : | |
| *f/k/a* CUSTOM CUPBOARDS, INC. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                   MARCH __3__, 2020

Presently before the Court is Defendant's Motion to Dismiss. (ECF No. 3.) For the following reasons, Defendant's Motion will be denied.

**I.     BACKGROUND**

In this two-count Complaint, Plaintiffs Hunter Kitchen & Bath, LLC and Chadwick Hunter assert claims for breach of contract (Count 1) and unjust enrichment (Count 2) against Defendant R.D. Henry & Company, LLC. Plaintiffs seek damages in the amount of $312,500, plus interest, costs, and attorney's fees. (Compl. 6-7, Notice of Removal Ex. A, ECF No. 1.)

**A.     Factual Background[1]**

Defendant builds and sells custom cabinets for businesses to install. (*Id*. ¶¶ 3, 7.) Plaintiffs sell and install custom kitchens and bathrooms in homes. (*Id*. ¶¶ 1-4.) From about December of 2015 until May of 2019, Plaintiffs purchased approximately $377,900 worth of custom cabinets from Defendant. (*Id*. ¶¶ 7, 10.) Plaintiffs installed Defendant's cabinets for homeowners. (*Id*. ¶ 7.) When Plaintiffs began purchasing Defendant's cabinets, Defendant provided Plaintiffs with a Specification Book ("Spec Book"). (*Id*. ¶ 8.) The terms and

---

[1] When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiffs' complaint and construe the facts alleged in the light most favorable to the plaintiffs. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

conditions of Plaintiffs' purchases were included in the Spec Book, which Defendant updated periodically. (*Id*. ¶¶ 8-9.) In the Spec Book, Defendant included a warranty for workmanlike product and warranties that it would remedy defects in its cabinets. (*Id*. ¶¶ 8, 29.) Defendant also provided Plaintiffs with product samples to show homeowners. (*Id*. ¶ 13a.)

Starting around July 15, 2017, Plaintiffs noticed a decline in the quality of the materials and workmanship in Defendant's cabinets. (*Id*. ¶¶ 12-13.) Defendant's cabinets did not conform to the specifications of the samples, in terms of color, finish, and shelving. (*Id*. ¶¶ 13, 19.) Defendant did not remedy the nonconformities. (*Id*. ¶ 31.) Plaintiffs took their own time to fix these nonconformities, resulting in project delays, unforeseen expenses, and homeowner dissatisfaction. (*Id*. ¶¶ 14-15, 20.)

Around this time, Plaintiffs also noticed problems with the delivery of Defendant's cabinets. (*Id*. ¶¶ 13-18.) Defendant's cabinets arrived damaged. (*Id*. ¶ 13.) Plaintiffs took time to repair or replace the damaged cabinets, resulting in project delays, unforeseen expenses, and homeowner dissatisfaction. (*Id*. ¶¶ 13-15.) Defendant's cabinets arrived late, also resulting in project delays and homeowner dissatisfaction. (*Id*. ¶¶ 16-18.)

Homeowner dissatisfaction impacted Plaintiffs financially. Plaintiffs had to offer discounts on their services, and they lost multiple referral sources. (*Id*. ¶¶ 21-23.) Plaintiffs relied on recommendations and referrals from satisfied homeowners, contractors, and architects for new business leads. (*Id*. ¶¶ 5-6.) As a result of Defendant's conduct, Plaintiffs incurred damages in the amount of $312,500. (*Id*. ¶ 24.)

Plaintiffs' Complaint does not explain why, in light of these issues, Plaintiffs continued to purchase Defendant's cabinets until May of 2019.

B.     **Procedural History**

On August 22, 2019, Plaintiffs filed a Praecipe for Writ of Summons in the Court of Common Pleas of Chester County, Pennsylvania. (Plfs.' Resp. Ex. A, ECF No. 7.) On August 27, 2019, Plaintiffs caused the Writ of Summons to be served on Defendant. (*Id*. at Ex. B.) On September 4, 2019, Defendant was served with the Writ of Summons. (*Id*. at Ex. C.)[2] On November 19, 2019, Plaintiffs filed the Complaint in the Court of Common Pleas of Chester County, Pennsylvania. (Compl.) That same day, Defendant was served with the Complaint. (*Id*.) On December 18, 2019, Defendant filed a Notice of Removal to this Court. (Notice of

---

[2] We note that on October 1, 2019, Defendant filed a Petition against Plaintiffs alleging breach of contract in the District Court of Sedgwick County, Kansas, 2019-LM-017023, ("Kansas action"). Defendant's Petition refers to Hunter Kitchen & Bath, LLC as "a dealer authorized to sell R.D. Henry's cabinets," (Kansas action Petition ¶ 6), and alleges that "[o]n or about December 21, 2015, [Chadwick] Hunter signed a Dealer Credit Application and Personal Guaranty . . . personally guarantee[ing] the payment of any obligation Hunter Kitchen owed to Custom Cupboards, Inc., and agree[ing] to pay any collection or attorney's fees which are incurred in settling such obligations." (*Id.* ¶¶ 7-8.) According to the Kansas action Petition, "[b]etween November 2018 and May 2019, Hunter Kitchen hired R.D. Henry to furnish, fabricate, and install cupboards and other products. . . . R.D. Henry delivered the products and performed the work and sent [Plaintiffs] invoices, which provided that a service charge of 1.5% per month will be added to past due accounts." (*Id.* ¶¶ 10-11.) The Kansas action Petition further alleges that Plaintiffs have "refused to pay the remaining balance of $26,695.07 in breach of the parties' agreement." (*Id.* ¶ 12.) Defendant is seeking "$26,695.07, plus any collection and attorney's fees, as well as prejudgment interest as allowed by law." (*Id.* ¶ 13.) Attached to the Kansas action Petition is a Dealer Credit Application, signed by Chadwick Hunter as the owner of Hunter Kitchen & Bath, LLC on January 4, 2016 and a Personal Guaranty signed by Chadwick Hunter as the owner of Hunter Kitchen & Bath, LLC on January 21, 2016, (*Id*. at Ex. A), and a statement of invoices for work orders from November 30, 2018 through August 30, 2019. (*Id*. at Ex. B.) On November 20, 2019, Plaintiffs filed an Answer to Petition and a Motion to Dismiss or in the Alternative Stay Court Proceedings. On January 2, 2020, Defendant filed a Response in opposition. Defendant's Response attached demand letters it had sent to Chadwick Hunter on June 14, 2019 and July 29, 2019. (Kansas action Resp. Ex. 1-B, 1-C, 1-E.) In the July 29, 2019 demand letter, it states: "I am aware that you previously reported some issues with some of the products you received, but it is my understanding that those issues have been resolved." (*Id*. at Ex. 1-E.) Following a January 30, 2020 hearing, the Honorable Eric A. Commer of the District Court of Sedgwick County stayed the Kansas action pending our ruling on the instant Motion to Dismiss.

Removal.)  On December 26, 2019, Defendant filed the instant Motion to Dismiss.  (Def.'s Mot., ECF No. 3.)  On January 13, 2020, Plaintiffs filed a Response in Opposition to the Motion.  (Plfs.' Resp.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), failure to state a claim upon which relief can be granted is a basis for dismissal of the complaint.  Fed. R. Civ. P. 12(b)(6).  To satisfy the Rule 12(b)(6) standard, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler*, 578 F.3d at 211.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

## III. DISCUSSION

Plaintiffs allege that from about July 15, 2017 through May of 2019, Defendant breached its contractual duties to Plaintiffs to provide conforming cabinets on time and to remedy any defects.  In the alternative, Plaintiffs allege that Defendant was unjustly enriched when Plaintiffs purchased Defendant's cabinets in reliance on Defendant's false assurances.

Defendant seeks dismissal of both claims.  Defendant also argues that attorney's fees are not an appropriate remedy.  Plaintiffs oppose dismissal and also contend that Defendant's Notice

of Removal was untimely. We address the issues raised by the parties in the following order: (1) removal; (2) breach of contract; (3) unjust enrichment; (4) attorney's fees.[3]

    **A.    Removal**

In response to Defendant's Motion to Dismiss, Plaintiffs argue that Defendant's Notice of Removal was untimely under 28 U.S.C. § 1446(b) because it was filed more than thirty days after Defendant was served with the Writ of Summons. (Plfs.' Resp. 4.) Plaintiffs are simply wrong.

The statute addressing the notice of removal provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). In 2005, the Third Circuit held that "a writ of summons alone can no longer be the 'initial pleading' that triggers the 30-day period for removal under the first paragraph of 28 U.S.C. § 1446(b)." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223 (3d Cir. 2005). The Court explained its reasoning as follows: "The model form for a general writ of summons under Pennsylvania law merely contains the plaintiff's name, the defendant's name, and notice that an action has been commenced, with the county, the date, the name of the prothonotary or clerk, and the deputy. This is insufficient to notify the defendant 'what the action is about.'" *Id.* (internal citation omitted); *see e.g.*, *Polanco v. Coneqtec Universal*, 474 F.

---

[3] In their opposition to Defendant's Motion to Dismiss, Plaintiffs argue that Defendant's Notice of Removal was untimely, thus depriving this Court of subject matter jurisdiction. Typically, a party seeking to challenge the propriety of removal must file an independent motion to remand. Although Plaintiffs did not raise the issue in accordance with customary practice, we will consider their argument.

Supp. 2d 735, 737 (E.D. Pa. 2007) ("Where, as here, defendants are served with a summons and the complaint is filed at a later date, the thirty day period commences from the time the defendants received a copy of the complaint. The initial pleading described in § 1446(b) is the complaint, not the summons, praecipe for writ of summons, or some other document like a Civil Cover Sheet." (citing *Sikirica*, 416 F.3d at 222)).

Defendant timely filed its Notice of Removal. Under *Sikirica*, the "initial pleading" was the Complaint, not the Writ of Summons. Since the Complaint was not served on Defendant until November 19, 2019, Defendant's December 18, 2019 Notice of Removal was filed within the 30-day period allowed under 28 U.S.C. § 1446(b).

### B. Breach of Contract (Count 1)

Under Pennsylvania law, a breach of contract claim has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal quotation marks and citation omitted).

Defendant points out that Plaintiffs did not attach the Spec Book to the Complaint. (Def.'s Mot. 2.) Pennsylvania Rule of Civil Procedure 1019(i) requires plaintiffs asserting breach of contract claims to attach written contracts to their complaints: "When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa. R. Civ. P. 1019(i). However, Pennsylvania Rules of Civil Procedure do not apply here. "Not only does the Pennsylvania standard not apply in federal court, Defendant overlooks the fact that it deprived itself of the protections afforded by Pennsylvania Rule 1019(i) by removing this action to federal

6

court." *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-1812, 2009 U.S. Dist. LEXIS 32424, at *8 n.1 (E.D. Pa. Apr. 15, 2009).

Defendant also argues that Plaintiffs failed to plead sufficiently definite terms of the alleged contract. (Def.'s Mot. 6.) We disagree.

"When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." *Transp. Int'l Pool, Inc.*, 2009 U.S. Dist. LEXIS 32424, at *9. "Common sense dictates that when retailers obtain products from manufacturers to sell to their customers, the transaction is pursuant to a contract." *DeFebo v. Andersen Windows, Inc.*, No. 09-2993, 2009 U.S. Dist. LEXIS 87889, at *14 (E.D. Pa. Sep. 24, 2009). "Any further details of the contract and the transactions at issue are fair ground for discovery. Should such discovery fail to reveal the existence of a viable breach of contract claim, [d]efendant[] may seek summary judgment." *Guzzi v. Morano*, No. 10-1112, 2011 U.S. Dist. LEXIS 115496, at *35 (E.D. Pa. Oct. 6, 2011).

Plaintiffs' Complaint contains factual allegations sufficient to support all three elements of a breach of contract claim. With regard to the first element—the existence of a contract and its essential terms—Plaintiffs allege that they purchased custom cabinets from Defendant, pursuant to samples provided by Defendant and Defendant's Spec Book, which contained warranties that Defendant would remedy any product defects. Plaintiffs also allege that Defendant assured Plaintiffs of certain delivery times. With regard to the second element—a breach of duty imposed by the contract—Plaintiffs allege that for about two years the cabinets that they purchased from Defendant did not conform to the samples Defendant provided and that

7

Defendant did not remedy the nonconformities. Plaintiffs also allege that Defendant's products arrived late or damaged. With regard to the third element—resultant damages—Plaintiffs allege that they sustained damages as a result: Plaintiffs incurred unforeseen expenses in fixing the cabinets, and they discounted their services and lost multiple referral sources because of customer dissatisfaction caused by Defendant's defective, damaged, or delayed cabinets.[4] Accepting all these factual allegations as true, Plaintiffs' breach of contract claim is sufficient to place Defendant on notice and to enable Defendant to reasonably respond. Further details about the contract and the transactions at issue are appropriate for discovery.

Defendant also argues that the breach of contract claim asserted by Chadwick Hunter is legally insufficient because the Complaint does not allege specifically that Chadwick Hunter intended to be bound by a contract with Defendant.[5] Defendant's argument is unavailing. The Complaint refers to both Plaintiffs throughout. For example, the Complaint alleges that: "*Plaintiffs* are in the business of selling and installing custom kitchens and bathrooms;" the Spec Book was "provided by Defendant to *Plaintiffs* when they became a dealer of Defendant's

---

[4] Defendant's awareness of issues with its cabinets is evident in Defendant's July 29, 2019 demand letter to Chadwick Hunter: "I am aware that you previously reported some issues with some of the products you received, but it is my understanding that those issues have been resolved." (Kansas action Resp. Ex. 1-E.)

[5] It is interesting that Defendant makes this argument in its Response to the instant Motion to Dismiss, when, in the Kansas action, Defendant is seeking to hold Chadwick Hunter personally liable for Hunter Kitchen's unpaid invoices. Defendant's Petition in the Kansas Action alleges that "[o]n or about December 21, 2015, [Chadwick] Hunter signed a Dealer Credit Application and Personal Guaranty . . . personally guarantee[ing] the payment of any obligation Hunter Kitchen owed to Custom Cupboards, Inc., and agree[ing] to pay any collection or attorney's fees which are incurred in settling such obligations." (Kansas action Petition ¶¶ 7-8.) Defendant also attached to the Petition a Dealer Credit Application and Personal Guaranty, signed by Chadwick Hunter as the owner of Hunter Kitchen & Bath, LLC. (*Id*. at Ex. A.) Further, prior to initiating the Kansas action, Defendant had tried to obtain the balance owed on the unpaid invoices by sending Chadwick Hunter demand letters on June 14, 2019 and July 29, 2019. (Kansas action Resp. Ex. 1 at ¶¶12-14.)

8

product;" "[i]n addition to the delay caused by the poor workmanship and quality issues with Defendant's product, *Plaintiffs* were required to incur unforeseen expenses and costs associated with the remediation of the defects in Defendant's product;" "*Plaintiffs'* Clients were dissatisfied with their projects;" and "[a]s a result of Defendant's material breach of its obligations under the Contract, *Plaintiffs* have incurred damages in excess of $312,500." (Compl. ¶¶ 4, 8, 15, 18, 24) (emphasis added.) Accordingly, Plaintiffs have alleged a breach of contract claim sufficient to survive Defendant's Motion to Dismiss.

### C. Unjust Enrichment (Count 2)

Under Pennsylvania law, to state a claim for unjust enrichment, plaintiffs must allege "benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value." *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 447 (3d Cir. 2000) (quoting 16 Summary of Pa. Jur. 2d Commercial Law § 2.2 (1994)). Typically, an unjust enrichment claim is "inapplicable when the relationship between parties is founded on a written agreement or express contract." *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969)). However, "[p]leading in the alternative under Fed. R. Civ. P. 8(d)(2) is . . . permissible . . . when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (internal citation omitted).

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because a claim for unjust enrichment cannot stand if an express contract governs the parties' relationship. (Def.'s Mot. 7-8.) Defendant is mistaken.

Defendant explicitly disputes the existence of a valid contract in its Motion: According to Defendants, "Plaintiffs' breach of contract claim should be dismissed because Plaintiffs fail to allege the existence of a valid and binding contract." (Def.'s Mot. 4); *see Sur. Adm'rs, Inc. v. Pacho's Bail Bonds*, No. 05-CV-5851, 2007 U.S. Dist. LEXIS 23543, at *14 (E.D. Pa. Mar. 29, 2007) (denying motion to dismiss unjust enrichment claim because "[defendant] disputes the existence of a contract – indeed, it is the primary basis for his motion to dismiss – and plaintiffs have exercised their right under Federal Rule 8(e)(2) to allege alternative forms of relief 'regardless of consistency.'"); *Alpart v. Gen. Land Ptnrs, Inc.*, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (same); *cf. AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, No. 10-6087, 2011 U.S. Dist. LEXIS 83582, at *11 (E.D. Pa. July 29, 2011) (granting motion to dismiss an unjust enrichment claim because "neither party contests the validity of the [contract]."); *Grudkowski*, 556 F. App'x at 170 n.8 (same). At this stage in the litigation, it is uncertain whether there is a valid, enforceable contract. Therefore, Plaintiffs may assert unjust enrichment as an alternative claim.

### D. Attorney's fees

Finally, Defendant moves to dismiss Plaintiffs' claim for attorney's fees. However, we need not consider on a motion to dismiss whether Plaintiffs may ultimately be entitled to attorney's fees. *See Brennan v. William Paterson College*, 34 F. Supp. 3d 416, 426 (D.N.J. 2014) (deferring decision on availability of attorney's fees on motion to dismiss because issue would not be ripe unless plaintiff prevailed); *Wharf, Inc. v. Dist. of Columbia*, 232 F. Supp. 3d 9,

22 (D.D.C. 2017) (holding that "the Court need not address what remedies are appropriate [on a 12(b)(6) motion] given that it has only determined that the parties have pled sufficient claims and counterclaims to survive a motion to dismiss").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied.

An appropriate Order follows.

                                            **BY THE COURT:**

                                            _____

                                            **R. BARCLAY SURRICK, J.**